**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ERIC FLORENCE | : | Case No. 1:22-cv-7210 |
| Plaintiff, | : | |
| v. | : | **BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| ORDER EXPRESS, INC., | : | |
| Defendant. | : | Hon. Virginia M. Kendall |
|  | : | Magistrate Judge Hon. Maria Valdez |

**DEFENDANT ORDER EXPRESS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF ERIC FLORENCE'S CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

Defendant, Order Express, Inc. (hereinafter "Order Express"), by and through its undersigned counsel, respectfully moves this Honorable Court to Dismiss Plaintiff Eric Florence's (hereinafter "Plaintiff") claims against it pursuant to Fed. R. Civ. P. 12(b)(1) and submits this Memorandum in support thereof.

**TABLE OF CONTENTS**

**I. INTRODUCTION** ...................................................................................................1

**II. PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS** ...........................2

**III. LEGAL ARGUMENT** ............................................................................................3

    **A.** The Requirements of Standing ............................................................................3

    **B.** Plaintiff has not Adequately Pleaded Imminent Future Harm ...............................5

    **C.** Allegations of Potential Future Harms do not Convey Standing in an Action for Damages ...............................................................................................................6

        **1.** Mitigation-Related Damages and Allegations of Emotional Distress do not Convey Standing without Concrete Injury .........................................8

        **2.** Allegations of a Loss of Privacy do not Convey Standing .......................8

        **3.** Plaintiff's Allegations of Diminished Value of PII does not Convey Standing .....................................................................................................9

**IV. CONCLUSION** .....................................................................................................10

**TABLE OF AUTHORITIES**

**CONSTITUTIONAL REFERENCES**

U.S. Cons. Art. III, § 2..................................................................................................................3

**CASES**

*American Legion v. American Humanist Assn.*, 139 S.Ct. 2067, 204 L.Ed.2d 452 (2009).............5

*Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019)....................................4,5

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) .............5,8

*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) .............4

*Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022) .................................................7,8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ....................4

*Greenstein v. Noblr Reciprocal Exchange*, 585 F.Supp.3d 1220 (N.D. Cal. 2022) ......................10

*In re Facebook Internet Tracking Litig.,* 140 F.Supp.3d 922 (N.D. Cal. 2015) ............................10

*Kim v. McDonald's USA, LLC*, 2022 WL 4482826 (N.D. Il. Sept. 27, 2022) ................................8

*Kylie S. v. Pearson PLC*, 475 F.Supp.3d 841 (N.D. Il. 2020) .........................................................9

*Lewert v. P.F. Chang's China Bistro, Inc.,* 819 F.3d 963 (7th Cir. 2016) ......................................7

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)...............4

*Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed.60 (1803) ...............................................3

*Pierre v. Midland Credit Management, Inc.,* 29 F.4th 934 (7th Cir. 2022)..............................6,7,8

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917,
48 L.Ed.2d 450 (1976).....................................................................................................................4

*Spokeo, Inc. v. Robbins*, 578 U.S. 330, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) ...................... 5,7

*Summers v. Earth Island Institute,* 555 U.S. 488, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) ..............6

*Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301
(N. D. Cal. Dec. 21, 2016) .............................................................................................................10

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021) ...............................4,5,7,8

*Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) .......................................5,6

*Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ............................4

I.  **INTRODUCTION**

We live in a data driven world. Our lives are both driven by and dependent upon ever flowing data—from ordinary retail transactions to utilities and financial transactions. As our technological world evolves, the risks of accessible data have grown. Data has increasingly become a target for malicious, criminal actors who launch debilitating attacks on information security systems large and small. These attacks, commonly referred to as data breaches, have become a common occurrence. There are many examples of massive, widely publicized data breaches, such as an attack on Equifax compromising Social Security numbers of 143 million Americans[1], and the 500 million Marriott hotel patrons[2] whose personal data was accessed by criminal actors. And as industries respond with increased security and modified behaviors, threat actors have developed increasingly sophisticated tactics designed to penetrate even the most thorough of defenses.

Before this Court are allegations related to one such breach. Plaintiff purportedly brings this Class Action on behalf of a proposed class of more than 63,000 individuals whose personally identifiable information ("PII") was compromised by a data breach impacting Order Express's information network. The Class Action Complaint seeks a number of remedies, including injunctive relief and monetary damages. Order Express submits that Plaintiff has failed to establish standing to bring the instant Class Action, and respectfully moves this Honorable Court to dismiss Plaintiff's Class Action Complaint with prejudice.

---

[1] Tara Siegel Bernard, Tiffany Hsu, Nicole Perlroth, & Ron Lieber, *Equifax Says Cyberattack May Have Affected 143 Million in the U.S.*, N.Y. TIMES, Sept. 7, 2017.

[2] *See* Aisha Al-Muslim, Dustin Volz, & Kimberly Chin, *Marriott Says Starwood Data Breach Affects Up to 500 Million People,* WALL ST. J., Nov. 30, 2018.

II.     **PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS**

Plaintiff initiated this putative Class Action by filing his Class Action Complaint (ECF No. 1, hereinafter "CAC") in the United States District Court for the Northern District of Illinois on December 28, 2022. Order Express was purportedly served on December 30, 2022. The parties conferred and agreed upon an extension of time for Order Express's responsive pleading to Plaintiff's CAC. On January 17, 2022, Order Express filed an Agreed upon Motion for Extension of Time. (ECF No. 8). On January 23, 2023, this Court granted said Motion. (ECF No. 9).

Plaintiff purportedly brings this Class Action on behalf of a proposed class of more than 63,000 individuals whose PII was compromised by a data breach impacting Order Express's information network. (ECF No. 1 at ¶¶ 1, 5). On September 7, 2022, Order Express discovered unusual activity on its computer network. (*Id.* at ¶ 27, quoting Notice of Data Breach, ECF No. 1-1). Order Express immediately began a forensic investigation which concluded on November 18, 2022. (*Id.*) Order Express learned that between July 29 and September 7, 2022, an unauthorized party accessed its computer network. (*Id.*) On December 15, 2022, Order Express notified various state attorneys general about the breach. (*Id.* at ¶ 7). Attorneys general were notified that the breach implicated PII, including Social Security Numbers ("SSNs") and driver's license numbers of some impacted consumers. (*Id.*) Order Express also notified persons impacted by the breach. (*Id.* at ¶ 27). Individuals were provided breach notification letters that included the data implicated specific to each recipient. (*Id.*) Plaintiff was notified that his driver's license number "may have been accessed and/or acquired by an unauthorized actor." (*Id.* at ¶¶ 28, 69).

Plaintiff alleges that, as a result of the data breach, his PII "may have been accessed and/or acquired by an unauthorized actor." (*Id.* at ¶ 70). As a result, he alleges that he will forever be worried about future use of his personal information. (*Id.*) This concern is based on the possibility

2

that Plaintiff's PII "may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing[.]" (*Id.* at ¶ 33). Plaintiff further alleges that he has spent time verifying the breach notification letter and monitoring his accounts. (*Id.* at ¶ 71). Finally, Plaintiff alleges that he and members of the proposed Class have experienced injuries including diminished value of PII, costs associated with prevention and recovery as a result of identity theft or fraud, lost time due to mitigation efforts in response to the breach, disclosure of private information, and increased risk to PII. (*Id.* at ¶ 14).

### III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING

#### A. The Requirements of Standing

Federal courts are limited to decisions affecting "the rights of individuals . . ." *Marbury v. Madison*, 5 U.S. 137, 170, 2 L. Ed. 60 (1803). The United States Constitution limits jurisdiction of the courts of the United States to cases and controversies. U.S. CONST. art. III, § 2. In order to present a case or controversy, a plaintiff must establish three elements: injury in fact, causation, and redressability. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33, 128 S. Ct. 2759, 2768, 171 L. Ed. 2d 737 (2008). An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual, or imminent, not 'conjectural' or hypothetical.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990)) (internal citations omitted). Further, a plaintiff must establish causation: a showing that the injury alleged is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Finally, a plaintiff must demonstrate a likelihood

3

that a favorable outcome will redress the injury alleged. *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136. Such a showing is essential to establishing a plaintiff's standing to bring suit and must be demonstrated "with the manner and degree of evidence required at the successive stages of the litigation . . ." *Id*. Simply stated, absent "an injury that the defendant caused, and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas v. Madison Ave. Assocs., Inc.,* 926 F.3d 329, 333 (7th Cir. 2019).

"As the party invoking federal jurisdiction, the [plaintiff] bear[s] the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez,* --- U.S. ---, 141 S. Ct. 2190, 2207–08, 210 L. Ed. 2d 568 (2021) (citing *Lujan*, 504 U.S. at 561). Plaintiffs must establish standing for each claim raised and each form of relief sought. *Id.* at 2208; *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L. Ed. 2d 610 (2000). As standing is a matter of jurisdiction, a defendant may challenge standing pursuant to a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.

To preserve the role of the judiciary, "a federal court may only resolve 'a real controversy with real impact on real persons.'" *TransUnion,* 141 S.Ct. at 2203 (citing *Am. Legion v. Am. Humanist Ass'n.,* 204 L. Ed. 2d 452, 139 S. Ct. 2067, 2103 (2019) (Gorsuch, J., concurring)). A purported injury in fact must "be concrete—that is, real and not abstract." *Am. Legion*, 141 S.Ct. at 2204 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)) (internal quotation marks omitted). An alleged breach of duty or statute alone does not give rise to a concrete injury. "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 141 S.Ct. at 225 (quoting *Casillas v. Madison Ave. Assocs., Inc.,* 926 F.3d 329, 332 (7th Cir. 2019)).

4

In a putative class action, the named plaintiff must personally establish standing under Article III. *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The named plaintiff "must allege and show that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent[.]" *Id.* at 502. A plaintiff who fails to allege standing individually is not qualified to seek relief on behalf of a proposed class. *Id.*

Generally, tangible harms are most easily recognizable as concrete injuries. *Spokeo*, 578 U.S. at 340–41, 136 S.Ct. at 1549. That said, intangible harms may also be recognized as concrete harms. *Id.* In limited circumstances, the threat of future injury may also give rise to a cognizable claim. However, courts have sagely limited the justiciability of claims based solely on future injury. In that regard, a "threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 1147, 185 L.Ed.2d 264 (2013) (emphasis added). A plaintiff cannot establish standing by simply "rely[ing] on a highly attenuated chain of possibilities" or speculation about future acts of persons unknown. *Id.*, 568 U.S. at 409, 133 S. Ct. at 1147 (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 496, 129 S.Ct. 1142, 1150, 173 L.Ed.2d 1 (2009).

**B. Plaintiff has not Adequately Pleaded Imminent Future Harm**

Plaintiff's claim rests in large part on the premise that he is subject to an "imminent" risk of harm as a result of the data breach relating to his PII, particularly his SSN and driver's license number. (CAC, ECF No. 1, at ¶¶ 59–60). Plaintiff alleges "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, *especially his Social Security* number, being placed in the hands of unauthorized third parties and possibly criminals." (*Id.* at ¶ 75) (emphasis in original). Importantly however, Plaintiff has not

5

alleged any actual compromise or misuse of his SSN. Plaintiff was merely notified that his "driver's license number *may have been* accessed and/or acquired by an unauthorized actor." (CAC, ECF No. 1, at ¶¶ 28, 69) (emphasis in original). Plaintiff cannot establish an injury in fact by simply referring to potential compromises of the SSN of unnamed Class members. Plaintiff must have standing based solely on the injuries he allegedly experienced. *Warth*, 422 U.S. at 501–02. Plaintiff has not pleaded facts or evidence to support an imminent risk of injury as a result of the potential compromise of *his* PII. The general, boilerplate averments in the CAC do not support a conclusion that the *possible* compromise of Plaintiff's driver's license number places him or putative class members at imminent risk of fraud or identity theft. Accordingly, Plaintiff lacks standing to bring this action.

### C. Allegations of Potential Future Harms do not Convey Standing in an Action for Damages

"Until recently there was a hint that the mere 'risk of real harm' could concretely injure plaintiffs seeking money damages." *Pierre v. Midland Credit Mgmt., Inc.,* 29 F.4th 934, 938 (7th Cir. 2022) (citing *Spokeo*, 578 U.S. at 341). For example, in *Remijas v. Nieman Marcus Group, LLC,* plaintiffs brought a class action alleging damages after a data breach sustained by a luxury retail store caused disclosure of sensitive credit card information belonging to the plaintiff and class members. 794 F.3d 688, 690 (7th Cir. 2015). Notably, approximately 9,200 of the disclosed credit cards experienced fraudulent charges. *Id.* Ultimately, the court held that the occurrence of the data breach placed the plaintiff in substantial risk of identity theft and credit card fraud, warranting standing under Article III. *Id.* at 697. The Seventh Circuit reached a similar result the following year, holding that it was "plausible to infer a substantial risk of harm from [a] data breach" involving stolen credit card information. *Lewert v. P.F. Chang's China Bistro, Inc.,* 819 F.3d 963, 965 (7th Cir. 2016). In *Lewert,* the court found that the stolen credit card information

6

placed the plaintiffs at risk for both fraudulent charges and identity theft, particularly as one of the named plaintiffs had already experienced fraudulent charges. *Id.* Ultimately, the Seventh Circuit concluded that the demonstrated risk of fraud coupled with mitigation expenses related to the breach conveyed standing. *Id.* at 969.

Subsequently, however, the Seventh Circuit has reevaluated these rulings and adopted the more restrictive view of standing articulated by *TransUnion*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2204. In *TransUnion*, the Supreme Court held that a risk of future harm applied only to claims seeking injunctive relief. <u>Allegations of future harm, even if sufficiently imminent, cannot convey standing for an action for damages</u>. *Id.*, 141 S.Ct. at 2210. The Seventh Circuit has recognized that the Supreme Court's decision in *TransUnion* clarifies the limitations of standing in actions alleging the risk of future harm. *See Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022) ("The Court's recent decision in *TransUnion* clarified that a risk of future harm is concrete only if the suit is for injunctive relief.").

As the Seventh Circuit recognized in *Ewing*, "An injury-in-fact must be concrete, particularized, and actual or imminent. A concrete injury is essential to standing: 'No concrete harm, no standing.'" *Id.* (quoting *TransUnion*, 141 S. Ct. at 2200). It held that, in light of the Court's decision in *TransUnion*, allegations of future harms may only be said to be concrete injuries in an action for injunctive relief. *Id.* ("*TransUnion* makes clear that a risk of future harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court."). Such allegations, therefore, cannot give rise to standing in an action for damages. *Id.* at 1152. The *Ewing* court further found that an alleged risk of future exposure of information did not constitute a concrete injury in an action for damages. *Id.*

Although *Ewing* and *TransUnion* were actions brought under the Fair Debt Collection Practices Act and Fair Credit Reporting Act, respectively, their holdings still apply in the instant matter. The doctrine of standing requires consistency. A recent decision within the Northern District of Illinois applied the *Ewing* and *Pierre* decisions in the context of a data breach and reached a similar conclusion. *See Kim v. McDonald's USA, LLC*, No. 21-CV-05287, 2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) (finding plaintiffs lacked Article III standing to pursue claims for increased risk of future harm, mitigation and emotional distress injuries, and loss of privacy claims stemming from data breach).

### 1. Mitigation-Related Damages and Allegations of Emotional Distress do not Convey Standing without Concrete Injury

Plaintiff has alleged that, as a result of the breach, he has spent an unspecified amount of time verifying the breach notification letter and monitoring unspecified accounts. (CAC, ECF No. 1, at ¶ 71). Plaintiff has further alleged that "for the rest of his life, [he] will have to worry about when and how his sensitive information may be shared or used to his detriment." (*Id*. at ¶ 70). As noted by the Supreme Court, standing is not conveyed by allegations of mitigation and other such reactions to potential future risk if the threatened harm is not "certainly impending." *Clapper*, 568 U.S. at 416 (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). Plaintiff has not alleged any actual injury *or* imminent harm. Therefore, Plaintiff's allegations of emotional harm or mitigation do not and cannot convey standing.

### 2. Allegations of a Loss of Privacy do not Convey Standing

Plaintiff further alleges injury in the form of a loss of privacy. (CAC, ECF No. 1, at ¶ 14). Specifically, Plaintiff avers that his driver's license "may have been accessed/or acquired by an unauthorized actor. The confidentiality of Plaintiff's sensitive information has been irreparably

8

harmed." (CAC at ¶ 70). This theory of injury was explored by the Seventh Circuit in *Remijas*, where the court ultimately found that an allegation of loss of privacy as pleaded did not support standing. 794 F.3d at 695. The court noted that this theory presupposed that federal law recognizes a property right in one's personal information that was not supported by law. *Id.* This "abstract injury" did not warrant a finding of standing. *Id.* Plaintiff's suggestion here that the confidentiality of his driver's license number was compromised is not any more persuasive. Accordingly, this allegation does not create standing.

### 3. Plaintiff's Allegations of Diminished Value of PII does not Convey Standing

This court has addressed allegations of injury based on purportedly diminished value of a plaintiff's PII. *See Kylie S. v. Pearson PLC*, 475 F.Supp.3d 841 (N.D. Ill. 2020). In that case, the district court held that the decreased value of personal information could not establish standing. *Id.* at 849. Absent allegations that the plaintiff had sold or would sell their personal information, or allegations cyber criminals had attempted to sell or trade the plaintiff's personal information for value, this theory of damages is inherently speculative. *Id.*

Other district courts have reached similar conclusions, finding that a plaintiff must first "establish both the existence of a market for her personal information and an impairment of her ability to participate in that market." *Greenstein v. Noblr Reciprocal Exchange*, 585 F.Supp.3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *9 (N. D. Cal. Dec. 21, 2016) (additional citations omitted)); *see also In re Facebook Internet Tracking Litig.,* 140 F.Supp.3d 922, 930–32 (N.D. Cal. 2015) (finding no standing where plaintiffs alleged a reduction in the value of their information but did "not allege they attempted to sell their personal information, that they would do so in the future, or that they were foreclosed

from entering into a value for value transaction"). Similarly, a plaintiff cannot equate an alleged loss of privacy to diminution of value—a loss of privacy does not constitute an economic loss. *Id.*

Plaintiff's alleged diminution of value injury is neither particularized nor concrete. Plaintiff has not pleaded that any person or persons has sold or traded his personal information. Plaintiff has not adequately pleaded the existence of a legitimate market for the sale of his PII. Moreover, Plaintiff's conclusory statement that his information has lost its value is unavailing. Plaintiff has not suggested that he has attempted or will someday attempt to sell such information. To the contrary, the basis of Plaintiff's suit is his claim that the potential sale of his personal information would cause him and the proposed Class an increased risk of future harms. These allegations are therefore insufficient to confer standing.

### IV. CONCLUSION

Plaintiff's allegations are ultimately a complaint without an injury. He has alleged any ongoing, particularized, or concrete harm. He has not alleged a substantial, imminent risk of future injury. Therefore, Plaintiff has failed to establish standing to bring this Class Action. Accordingly, Plaintiff's Class Action Complaint should be dismissed pursuant to Rule 12(b)(1).

February 20, 2023

Respectfully submitted,

By: */s/ Andrew S. Chestnut*
Robert J. Bates (No. 3122268)
rbates@batescarey.com
Andrew S. Chestnut (No. 6312527)
achestnut@batescarey.com
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph. 312.762.3100
Fax. 312.762.3200

>Ernest Koschineg (*pro hac vice pending*)
>ekoschineg@c-wlaw.com
>Jill H. Fertel (*pro hac vice pending*)
>jfertel@c-wlaw.com
>CIPRIANI & WERNER PC
>450 Sentry Parkway, Suite 200
>Blue Bell, PA 19422
>Ph. 610.567.0715
>
>*Counsel for Order Express, Inc.*