THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC FLORENCE and AISHA BUNDAGE, <br><br> on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ORDER EXPRESS, INC., <br><br> Defendant. | Case No.: 1:22-cv-07210 |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND TO
<u>DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS</u>**

i

## I. INTRODUCTION

Following hard-fought settlement negotiations, the Parties[1] reached a settlement to resolve claims arising from a Ransomware Attack OE announced in December 2022. The settlement creates a non-reversionary common fund of $1,500,000.00 for the benefit of approximately 63,221 class members, including (i) reimbursement for Ordinary Out-of-Pocket Losses, (ii) reimbursement for Extraordinary Losses and Attested Time; (ii) Residual Cash Payments of up to $550; and (iv) Credit Monitoring Services. Subject to Court approval, the Settlement Fund will also pay for a notice and administration program, a service award to RP, and attorneys' fees and expenses. OE commits to pay for, implement, and continue certain data-security enhancements.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). RP thus moves for an order preliminarily approving the settlement and directing class notice and scheduling a Final Approval Hearing. In support of her motion, RP submits the Settlement Agreement ("Settlement Agreement") (Ex. 1 hereto), which includes a proposed order preliminarily approving the settlement and directing notice (Ex. D to the Settlement Agreement); the declaration of proposed co-Class Counsel Ryan D. Maxey ("Maxey Decl.") (Ex. 2 hereto); and the declaration of Steven Weisbrot behalf of the proposed Claims Administrator (Angeion Group, LLC ("Angeion")), including the Notice Plan ("Weisbrot Decl.") (Ex. 3 hereto).

## II. FACTUAL BACKGROUND

**A. Overview of the Litigation**

On or around July 29, 2022, to September 7, 2022, OE experienced a Ransomware Attack

---

[1] The parties to the settlement are Aisha Bundage, the Representative Plaintiff ("RP"), on behalf of the proposed Settlement Class, and Defendant Order Express, Inc. ("OE"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1.

1

on its network. OE's investigation of the Ransomware Attack determined that the threat actor accessed data pertaining to OE's customers, including name, Social Security number, and driver's license number. On or around December 15, 2022, OE announced the Ransomware Attack. On December 28, 2022, RP filed a Class Action Complaint in this Court and later filed an Amended Class Action Complaint, (ECF No. 15) (the "Complaint"). The Court denied OE's motion to dismiss. OE denies the allegations and the claims made in the Complaint.

On February 1, 2024, the parties participated in a full-day mediation facilitated by an experienced mediator, Bennett Picker. After a full day of negotiations, the parties remained at an impasse. Following adjournment, the parties continued to exchange information, and on March 9, 2024, the parties reached an agreement in principle on a $1,500,000.00 Settlement Fund, the terms of which were later finalized in this Settlement Agreement and the attached exhibits. Attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the settlement, including the payment of the Settlement Fund. Maxey Decl. ¶ 21.

**B. The Terms of the Proposed Settlement**

    **1. The Settlement Class**

The proposed Settlement Class is defined as: all individual U.S. residents to whom Order Express sent notice of the Ransomware Attack. S.A. ¶ 1.28.[2] OE represents that the Settlement Class contains approximately 63,221 individuals. *Id.*

    **2. The Settlement Fund**

---

[2] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Attack or who pleads nolo contendere to any such charge. *Id*.

OE will pay $1,500,000.00 into a Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses award by the Court. *Id.* ¶ 2.1. Specifically, within thirty (30) days of preliminary settlement approval, OE will fund a non-reversionary cash settlement fund in the amount of $250,000.00 for the benefit of Settlement Class Members (the "Settlement Fund"). *Id.* Within thirty (30) days of the Effective Date, as defined in ¶ 1.12, OE will further fund the Settlement Fund in the amount of $1,250,000.00. *Id.* If there is no final approval of the settlement, any amount remaining in the Settlement Fund will be returned to OE. *Id.* ¶ 7.5. Absent the Court's rejection of the Settlement, no proceeds will revert to OE for any other reason. *Id.* ¶ 2.1. The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **Ordinary Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for reimbursement for "Ordinary" Out-of-Pocket Losses up to $500 per individual. S.A. ¶ 2.4. "Ordinary" Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Ransomware Attack that were incurred between July 29, 2022 and the Claims Deadline. *Id.* ¶ 2.4.1.

- **Extraordinary Losses and Attested Time.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $6,500 per individual. S.A. ¶ 2.5. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Ransomware Attack, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Out-of-Pocket Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. *Id.* ¶ 2.5.1. Settlement Class Members with valid, documented Extraordinary Out-of-Pocket Losses may also submit a claim for up to 10 hours of time spent remedying issues related to the Ransomware Attack at a rate of $30 per hour by providing an attestation and a brief description of: (1) the actions taken in response to the Ransomware Attack; and (2) the time associated with each action ("Attested Time"). *Id.* ¶ 2.5.4.

- **Residual Cash Payment.** In addition to making Claims for Ordinary Out-of-Pocket Losses and/or Claims for Extraordinary Out-of-Pocket Losses and Attested Time, Settlement Class Members may elect to receive a cash payment of up to $550 on a claims-made basis. *Id.* ¶ 2.7. The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of Claims for Ordinary Out-of-Pocket Losses, Claims

> for Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, notice and administration costs, and service award payments and attorneys' fees and expenses awarded by the Court, by the number of Residual Cash Payment claimants, and thus could be less than $550. *Id.* ¶ 2.7.
>
> - **Credit Monitoring/Identity Theft Protection Services**. Settlement Class Members who submit a claim can elect to enroll in five years of identity theft protection and credit monitoring services under the settlement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. *Id.* ¶ 2.8. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a Claim for Ordinary Out-of-Pocket Losses, a Claim for Extraordinary Losses and Attested Time, and/or a Claim for a Residual Cash Payment under the settlement. *Id.*

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id.* ¶ 2.9.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses and Attested Time, the claimant must provide documentation supporting their claim (*id.* ¶¶ 2.4.2, 2.5.2).

If the aggregate amount of approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses and Attested Time exceeds the remaining amount of the Settlement Fund after payment for costs of Credit Monitoring Services and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses, approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.* ¶ 2.2.

Residual Cash Payments will be increased *pro rata* to a maximum of $550 or decreased *pro rata* to consume the remaining amount of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses. *Id.* ¶ 2.3.

3.  **Proposed Injunctive Relief—Business Practice Commitments**

For a period of 3 years following execution of the Settlement, OE commits to pay for, implement and continue certain data-security enhancements and business practices. *Id*. ¶ 2.10.

4.  **Proposed Notice and Claims Program**

Proposed Class Counsel have retained, and request that the Court appoint, Angeion Group as the Claims Administrator to provide notice to Settlement Class Members and to process claims. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the 63,221 Settlement Class Members via U.S. mail. Weisbrot Decl. ¶ 21. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions. *Id.* ¶ 24. In proposed Class Counsel's experience, and according to Angeion, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement. *Id.* ¶ 34. The Notice Plan is thus the best notice practicable under the circumstance of this case. *Id*.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the Settlement Website or by mail. Angeion, the proposed Claims Administrator, is a widely-regarded expert with the experience and capability to handle a case of this magnitude. *See generally* Weisbrot Decl.

5.  **Attorneys' Fees and Expenses and Service Awards**

Proposed Class Counsel may request an award of attorney's fees and expenses of up to one third of the Settlement Fund, or $500,000.00, to be paid exclusively from the Settlement Fund. S.A. ¶ 7.2. Class Counsel may also request a service award of up to $2,500.00 for RP to be paid

5

exclusively from the Settlement Fund. *Id*. ¶ 7.3. OE takes no position on these requests.

**6. Releases**

The Settlement Class will release OE from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. *Id*. ¶¶ 1.23, 1.24, 6.1.

### III. ARGUMENT

In *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021), another data privacy case,[3] Judge Lee thoroughly laid out the criteria for approving a class action settlement in the data privacy context before analyzing those criteria and ultimately granting preliminary approval of a class action settlement. RP relies on Judge Lee's Order throughout this motion as it offers guidance particularly useful in the data privacy context, including as follows:

> When parties seek preliminary approval of a class-action settlement agreement under Rule 23(e), the district court must undertake three essential inquiries.
>
> First, the court must determine whether it "will likely be able" to certify the putative class for purposes of judgment on the proposed settlement…
>
> Second, the district court must determine whether the proposed settlement is "within the range of possible approval" with regard to the criteria set forth in Rule 23(e)(2)…
>
> Third, if the district court finds that it will likely be able to certify the putative class and that the proposed settlement is within the range of possible approval, the court must then direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement….

*Id.* at 1083-84 (citations omitted).

**A. Whether the Putative Class is Likely to be Certified**

**1. Rule 23(a) requirements.**

"[U]nder Rule 23(a), the Court must determine whether it is likely to find that: '(1) the

---

[3] Whereas this action arose from a cyberattack, *TikTok* arose from the alleged "surreptitious[] harvesting and profiting from Plaintiffs' private information, including their biometric data, geolocation information, personally identifiable information, and unpublished digital recordings." 565 F. Supp. 3d at 1079.

6

class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)).

### i. Numerosity.

"Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *Id.* (quoting *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002)). The proposed class includes approximately 63,221 individuals. S.A. ¶ 1.28. "[T]he Class is plainly too numerous for joinder to be practicable." *In re TikTok*, 565 F. Supp. 3d at 1085.

### ii. Commonality.

"[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement." *Id.* (quoting *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002)). Common to all class members is whether Defendant's data security adequately protected their personal information. *See generally* Complaint. Commonality is satisfied because this issue is capable of class-wide resolution.[4]

### iii. Typicality.

"Typicality is satisfied if a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory." *In re TikTok*, 565 F. Supp. 3d at 1085 (quoting *Parker*, 206 F.R.D. at 213). RP's claims arise from the same Ransomware Attack that impacted other class members. *See*

---

[4] *See Fox v. Iowa Health Sys.*, No. 18-CV-327-JDP, 2020 WL 5678704, at *1 (W.D. Wis. Sept. 16, 2020) (order granting preliminary approval) (finding commonality met where plaintiffs' claims involved common questions including whether the defendant "failed to take reasonable measures to protect the data" and "whether the data breach were caused by such failures"). *Fox*, like this action, arose from a data breach. 2021 WL 826741, at *2.

7

Complaint ¶¶ 1-16. Typicality is satisfied because resolving RP's claims would also resolve the class members' claims.[5]

### iv. Adequacy of representation.

"Th[e adequacy of representation] prerequisite of Rule 23(a) has two components: (1) 'the representatives must not possess interests which are antagonistic to the interests of the class,' and (2) 'the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation.'" *In re TikTok*, 565 F. Supp. 3d at 1085 (citation omitted). RP's and class members' claims arise from the impact to their PII as a result of the Ransomware Attack. RP actively participated in the case by assisting with the initial and amended complaints and approving the Settlement. Maxey Decl. ¶ 22. The proposed service award does not misalign her interests with those of other class members. And proposed Class Counsel have capably litigated this action thus far, including through a motion to dismiss. These factors satisfy the adequacy requirement.[6]

### 2. Rule 23(b) requirements.

"Because Plaintiffs seek to certify the Class under Rule 23(b)(3), the Court also must consider whether it is likely to conclude that: 'the questions of law or fact common to the class members predominate over any questions affecting only individual members'; and 'a class action is superior over other available methods for fairly and efficiently adjudicating the controversy.'" *In re TikTok*, 565 F. Supp. 3d at 1086 (quoting Fed. R. Civ. P. 23(b)(3)).

### i. Common questions of law or fact predominate.

---

[5] *See Fox*, 2020 WL 5678704, at *2 (finding typicality met where "Plaintiffs suffered the same baseline harm that all members of the proposed class suffered—their personal data was exposed during the data breaches, exposing them to the threat of future identity theft and fraud.") (citing *Lewert v. P.F. Chang's China Bistro*, 819 F.3d 963, 966–67 (7th Cir. 2016)).
[6] *See Fox*, 2020 WL 5678704, at *2 (finding adequacy of representation met where "[t]he court sees no apparent conflicts between the named plaintiffs' interests and those of the rest of the class. Plaintiffs' counsel has capably litigated the case so far, surviving defendants' motion to dismiss, and nothing in the litigation up to this point calls counsel's capabilities into question.").

"To determine whether common questions predominate, the court considers (1) the class members' interests in individually controlling their own claims; (2) the nature and extent of any other litigation about the controversy; (3) the desirability of concentrating the litigation here; and (4) any management challenges that the case may present." *Fox*, 2021 WL 826741, at *3 (citing Fed. R. Civ. P. 23(b)(3)). RP alleges that Defendant acted uniformly as to RP and other class members, resulting in the theft of their personal information and its placement on the dark web. *See* Complaint ¶¶ 1-16. This satisfies the predominance requirement.[7]

### ii. A class action is the superior method to adjudicate the controversy fairly and effectively.

It would be impractical for 63,221 individuals to bring separate lawsuits against Defendant with claims arising from the Ransomware Attack. Because a class action is the better method for RP and other class members to vindicate their rights, the superiority requirement is satisfied.[8]

### B. Whether the Proposed Settlement is Within the Range of Possible Approval.

"The next issue is whether the proposed settlement is 'within the range of possible

---

[7] *See, e.g.*, *In re TikTok*, 565 F. Supp. 3d at 1085 ("Predominance is met because many of the issues of law and fact common to members of the [classes] … may be resolved 'through generalized proof'—namely, by examining Defendants' uniform data collection and privacy practices against their legal obligations. And these issue 'are more substantial' than any issues that may be 'subject only to individualized proof.'") (citing *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)); *Fox*, 2020 WL 5678704, at *2 (finding predominance requirement satisfied where "First, although individual class members have an interest in controlling their own claims, they also have an interest in efficiently resolving their claims, which a class action and the proposed settlement provide. Individual litigation of each class member's claims would be expensive and time-consuming, and the cost of litigation would likely exceed any recovery. Second, there is no indication that any class members are pursuing other litigation related to the claims at issue in this case. Third, consolidating the common issues and resolving them in one case is efficient. Fourth, the case presents no management difficulties because the parties have settled.") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

[8] *See, e.g.*, *In re TikTok*, 565 F. Supp. 3d at 1085 ("The requirement of superiority also is met because, given the relatively modest amounts that class members would stand to recover in individual actions, it is improbable that many 'would possess the initiative to litigate individually.'") (citing *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974); *Fox*, 020 WL 5678704, at *3 ("Superiority is also satisfied. This action involves a large number of low-value claims. Resolving those claims through a class action will save time and expense for both the class members and UnityPoint, and it will also conserve court resources.").

9

approval' with regard to its fairness, reasonableness, and adequacy to class members." *In re TikTok*, 565 F. Supp. 3d at 1087 (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (cleaned up)). "The Court must consider a variety of factors in making this determination, including: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed,' as noted." *Id.* (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014)).

### i. The strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer.

As data breach cases go, this case was stronger than average on the merits given the allegations that the Social Security numbers and driver's license numbers of RP and Class Members were acquired by an unauthorized actor and posted on the dark web. Compl. ¶¶ 1, 7-10; *see generally* Order (ECF No. 24). Commensurate with this, the "common fund" settlement obtained for RP and Settlement Class Members is an exemplary result for a data breach settlement, particularly a cyberattack case. Below are example orders within the Seventh Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, none of which achieves the $23.72[9] per Settlement Class Member obtained here:

- $14.64 per class member: *Linman v. Marten Transport, Ltd*, No. 4:22-CV-12086, 2024 WL 2974831, at *1-2 (W.D. Wis. June 13, 2024) (granting preliminary approval) ($520,000 fund for approximately 35,511 class members)

- $1.55 per class member: *In re Forefront Data Breach Litig.*, No. 1:21-cv-00887-LA, at ¶¶ 2, 10 (E.D. Wis. Oct. 3, 2022) (ECF No. 58) (granting preliminary approval) ($3,750,000 fund for approximately 2,413,552 class members)

---

[9] Plaintiffs' dark web expert located approximately 30,000 unique Social Security numbers on the dark web as a result of this Ransomware Attack, making the $23.72 per Settlement Class Member an even more impressive result.

10

Outside of the Seventh Circuit, recently approved data breach settlements of cases arising from cyberattacks have similarly resulted in a lower average dollar-per-person:

- $10.03 per class member: *In re CorrectCare Data Breach Litig.*, No. CV 5:22-319-DCR, 2024 WL 1403075 (E.D. Ky. Apr. 1, 2024) (denying preliminary approval motion without prejudice), *preliminary approval granted after further information submitted*, 2024 WL 1854711 (E.D. Ky. Apr. 29, 2024) ($6,490,000 fund for 646,701 class members).

- $7.25 per class member: *Holden v. Guardian Analytics, Inc.*, No. 2:23-CV-2115, 2024 WL 2845392 (D.N.J. June 5, 2024) (granting final approval) ($1,430,207.50 fund for approximately 197,270 class members)

- $6.18 per class member: *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022) (granting preliminary approval) ($4,300,000 fund for 694,679 class members)

- $1.33 per class member: *Barletti v. Connexin Software, Inc.*, 2024 WL 1096531 (E.D. Pa. Mar. 13, 2024) ($4,000,000 fund for approximately 3,000,000 class members)

### ii. The complexity, length, and expense of further litigation.

RP faces significant risks and costs should she continue to litigate the case due to the potential expense and length of continued proceedings necessary to prosecute the litigation against OE through motion practice, trial, and potential appeals.[10]

### iii. The amount of opposition to the settlement and reaction of class

"[P]laintiffs have not yet provided notice to the class, so it is too early to evaluate affected parties' opposition to the settlement." *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) (Tharp, J.) (citation omitted). "The Court [should] consider objections from class members or other affected parties during the fairness hearing and before determining whether to grant final approval." *Id.* Likewise, as RP has not yet provided notice to

---

[10] *See Lucas*, 2017 WL 6733688, at *12 ("Here, the complexity, length, and expense of continued litigation is significant. As noted above, if the plaintiff's case … continues without settlement, the plaintiffs will be forced to litigate several complex issues—contested class certification, statute of limitations, joint employer liability, and damages calculations. The plaintiffs' damages calculations require expert analysis and opinion. Settlement, however, will eliminate the costs and risks of litigating these complex issues…. This factor weighs strongly in favor of approval of the settlement.").

11

the class, it is too early to evaluate the reaction of the class.

### iv. The opinion of competent counsel.

Proposed Class Counsel have extensive experience in data breach and class action litigation. Maxey Decl. ¶¶ 3-13. Proposed Class Counsel further believe that accepting the negotiated terms of the settlement agreement is in the best interest of the class. *Id.* ¶ 27. The settlement is the result of arms-length negotiation breached after a mediation facilitated by Mr. Picker. *Id.* ¶ 16-17. These considerations support settlement approval. *See, e.g.*, *Lucas*, 2017 WL 6733688, at *12 (finding similar considerations supported settlement approval).

### v. The stage of the proceedings and the amount of discovery completed.

"The stage of the proceedings and the amount of discovery completed at the time of settlement is important because it 'indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.'" *Id.* (citation omitted). "The lack of discovery prior to settlement, however, does not prevent the Court from approving a settlement." *Id.* (citing *In re AT&T Mobility*, 270 F.R.D. at 350. "The 'pertinent inquiry' is what facts and information have been provided." *Id.* (quoting *In re AT&T Mobility Wireless*, 789 F. Supp. 2d at 967).

Here, prior to mediation, Plaintiffs served (i) interrogatories, requests for production, and requests for admission and (ii) information mediation-related information requests. Maxey Decl. ¶ 17. From OE's responses, proposed Class Counsel gained information about how OE acquired the information of RP and class members; why OE stored the information as it did; OE's communications with the threat actor; OE's efforts to mitigate the impact of the Ransomware Attack on RP and class members; the nature of the Ransomware Attack and the identity of the threat actor; OE's knowledge of how the Ransomware Attack was effected; and the number of class members with particular data elements impacted. *Id*. This information was more than

sufficient to make an informed decision as to whether, and how, to settle the claims here.[11]

### C. Whether the Proposed Notice Plan Provides the Best Notice Practicable.

"The final issue is whether the proposed notice plan provides 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *In re TikTok*, 565 F.Supp.3d at 1091 (quoting Fed. R. Civ. P. 23(c)(2)(B)). "The best notice practicable is that which is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

RP has selected, and Defendant has approved, Angeion Group, LLC as the Claims Administrator. S.A. ¶ 1.5. The proposed notice program provides that a Short Form Notice, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, shall be mailed to all Settlement Class Members. *Id.* ¶ 3.2.1. The Claims Administrator shall mail a copy of the Short Form Notice via United States Postal Services ("USPS") first class mail to all Settlement Class Members for whom OE can ascertain a mailing address from its records with reasonable effort. *Id.* For any Short Form Notices that are returned undeliverable, the Claims Administrator shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent feasible. *Id.* The Claims Administrator shall email a copy of the Short Form Notice to all Settlement Class Members for whom OE can ascertain an email address from its records with reasonable effort. *Id.*

---

[11] *See Lucas*, 2017 WL 6733688, at *12 ("The plaintiffs acknowledge that the settlement occurred in the early stage of litigation with mostly informal discovery, but argue that this is a benefit to the class members in light of the financial and legal risks associated with formal discovery and motion practice. The Court finds that this factor does not weigh against the granting of preliminary approval of the Settlement Agreement.").

The Short Form Notice (i) states that a proposed settlement has been reached in a class action lawsuit arising from the Ransomware Attack, (ii) defines the class as "individual U.S. residents to whom OE sent notice of the Ransomware Attack on or about December 15, 2022," (iii) explains that the claims in the lawsuit relate to the Ransomware Attack and identifies the relief available to Settlement Class Members, (iv) advises that "Other Options" include exclusion from the Settlement or objecting to the it, and (v) advises that Settlement Class Members who do not exclude themselves from the Settlement will give up their right to sue OE for the claims that the Settlement resolves. S.A. Ex. B. The deadlines to make a claim, request exclusion, and object are have placeholders for this information to be filled in following preliminarily approval. *Id.*

In addition to mailing the Short Form Notice to Settlement Class Members, the Claims Administrator shall also post a Long Form Notice on the Settlement Website. *Id.* ¶ 3.2.2. RP submits that the notice program satisfies the requirements of Rule 23 and due process and should be approved. *See, e.g.*, *In re TikTok*, 565 F. Supp. 3d at

**D. Appointment of Class Counsel.**

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
> (A) must consider:
> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
> (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
> (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
> (E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g).

Proposed class counsel have invested many hours investigating the claims in this case. Maxey Decl. ¶ 14. Proposed class counsel also have extensive experience in prosecuting data-breach class actions. *Id*. ¶¶ 3-13. Through that experience, proposed class counsel have ample knowledge of the applicable law and the necessary resources. *Id*. Accordingly, Patrick A. Barthle and Ryan D. Maxey should be appointed as class counsel.

### E. Timeline of Settlement Events

For the Court's convenience, RP proposes the following dates and deadlines:

| ACTION | DATE |
|---|---|
| Defendant Provides Class Member List | Within 7 days of an order directing class notice |
| Class Notice Date | 30 days after entry by the Court of the Preliminary Approval Order |
| Completion of Notice Program | 60 days after entry of the Preliminary Approval Order |
| Motion for Attorneys' Fees, Expenses, and Service Awards to RP | 14 days prior to the Objection Deadline |
| Exclusion / Opt-Out Deadline | 60 days from the Class Notice Date |
| Objection Deadline | 60 days from the Class Notice Date |
| Deadline to Submit Claims | 90 days after the Class Notice Date |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled no earlier than 150 days after entry of Preliminary Approval Order) |

### IV. CONCLUSION

For the reasons set forth set forth above, RP requests the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

15

Date: June 18, 2024                       Respectfully Submitted,

/s/ *Ryan D. Maxey*

Ryan D. Maxey
MAXEY LAW FIRM, P.A.
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Michael N. Hanna
N.D. IL Bar No. 85035 (FL)
Morgan & Morgan, P.A.
55 E Monroe St. Ste. 3800
Chicago, IL 60603
2000 Town Center, Suite 1900
Southfield, MI 4807
(313) 739-1950
mhanna@forthepeople.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 18, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

                                                    /s/ *Ryan D. Maxey*
                                                    Ryan D. Maxey