THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC FLORENCE and AISHA BUNDAGE, | Case No.: 1:22-cv-07210 |
| on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| ORDER EXPRESS, INC., | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

i

Representative Plaintiff Aisha Bundage ("Plaintiff" or "RP"), on behalf of herself and all others similarly situated, moves for entry of an order granting final approval of this proposed class action settlement and certifying the settlement class. For the reasons set forth below, RP respectfully requests that the Court, after the final approval hearing scheduled for November 25, 2024, grant this motion, grant Representative Plaintiff's Motion for Service Award, Litigation Costs, and Attorneys' Fees, and enter a final judgment dismissing this case. This motion is supported by the Brief contained herein. The Parties have conferred, and Defendant does not oppose the relief requested herein.

## I. INTRODUCTION

Following hard-fought settlement negotiations, the Parties[1] reached a settlement to resolve claims arising from a Ransomware Attack OE announced in December 2022. The settlement creates a non-reversionary common fund of $1,500,000.00 for the benefit of approximately 63,221 class members, including (i) reimbursement for Ordinary Out-of-Pocket Losses, (ii) reimbursement for Extraordinary Losses and Attested Time; (ii) Residual Cash Payments of up to $550; and (iv) Credit Monitoring Services. Subject to Court approval, the Settlement Fund will also pay for a notice and administration program, a service award to RP, and attorneys' fees and expenses. OE commits to pay for, implement, and continue certain data-security enhancements.

The Claims Administrator has received approximately 586 Online Claim Form submissions and 1,267 Paper Claim Form submissions, for a total of 1,853 claims. This is a claims

---

[1] The parties to the settlement are Aisha Bundage, the Representative Plaintiff ("RP"), on behalf of the proposed Settlement Class, and Defendant Order Express, Inc. ("OE"). Capitalized terms used in this Motion have the same meaning as in the Settlement Agreement ("S.A.") (ECF No. 50-1).

1

rate of **2.94%** against 63,004 Settlement Class Members.[2] If the Court (i) grants RP's request to award RP a $2,500.00 service award, $472,000.00 in reasonable attorneys' fees, and $28,000.00 in litigation expenses and (ii) approves approximately $100,000.00 for the costs of notice and administration, approximately $900,000.00 of the $1,500,000.00 Settlement Fund will remain for payments to Class Members. Dividing this amount equally among the 1,853 claimants to date would result in a payment of **$485.69** to each claimant, an exceptional result in a data breach case. Ultimately, the amount of any cash payment will be calculated after payment of approved claims for credit monitoring ($46.00 per approved claimant for 5 years of 3-bureau credit monitoring).

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). RP thus moves for an order finally approving the settlement and directing class notice and certifying the settlement class. In support of her motion, RP relies on the declaration of co-Class Counsel Ryan D. Maxey submitted in support of the preliminary approval motion ("Maxey Decl.") (ECF No, 50-2); and the declaration of Jonathan P. Shaffer on behalf of the Claims Administrator (Angeion Group ("Angeion")) ("Shaffer Decl.") (Ex. 1 hereto).

## II. FACTUAL BACKGROUND

### A. Overview of the Litigation

On or around July 29, 2022, to September 7, 2022, OE experienced a Ransomware Attack on its network. OE's investigation of the Ransomware Attack determined that the threat actor accessed data pertaining to OE's customers, including name, Social Security number, and driver's license number. On or around December 15, 2022, OE announced the Ransomware Attack. On

---

[2] As noted below, while OE represents that the Settlement Class contains approximately 63,221 individuals, the Claims Administrator determined that there were 63,004 Settlement Class members after removing duplicative records in the class list it received from OE. *Infra* § II.B.1.

December 28, 2022, RP filed a Class Action Complaint in this Court and later filed an Amended Class Action Complaint, (ECF No. 15) (the "Complaint"). The Court denied OE's motion to dismiss. OE denies the allegations and the claims made in the Complaint.

On February 1, 2024, the parties participated in a full-day mediation facilitated by an experienced mediator, Bennett Picker. After a full day of negotiations, the parties remained at an impasse. Following adjournment, the parties continued to exchange information, and on March 9, 2024, the parties reached an agreement in principle on a $1,500,000.00 Settlement Fund, the terms of which were later finalized in this Settlement Agreement and the attached exhibits. Attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the settlement, including the payment of the Settlement Fund. Maxey Decl. ¶ 16.

**B. The Terms of the Proposed Settlement**

    **1.    The Settlement Class**

The proposed Settlement Class is defined as: all individual U.S. residents to whom Order Express sent notice of the Ransomware Attack. S.A. ¶ 1.28.[3] OE represents that the Settlement Class contains approximately 63,221 individuals. *Id.* The Claims Administrator determined that there were 63,004 Settlement Class members after removing duplicative records in the class list it received from OE. Shaffer Decl. ¶ 4.

    **2.    The Settlement Fund**

---

[3] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Attack or who pleads nolo contendere to any such charge. *Id.*

OE has already paid $250,000.00 into a Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses award by the Court. *Id.* ¶ 2.1. Within thirty (30) days of the Effective Date, as defined in ¶ 1.12, OE will further fund the remainder of the Settlement Fund, in the amount of $1,250,000.00. *Id.* If there is no final approval of the settlement, any amount remaining in the Settlement Fund will be returned to OE. *Id.* ¶ 7.5. Absent the Court's rejection of the Settlement, no proceeds will revert to OE for any other reason. *Id.* ¶ 2.1. The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **Ordinary Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for reimbursement for "Ordinary" Out-of-Pocket Losses up to $500 per individual. S.A. ¶ 2.4. "Ordinary" Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Ransomware Attack that were incurred between July 29, 2022 and the Claims Deadline. *Id.* ¶ 2.4.1.

- **Extraordinary Losses and Attested Time.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $6,500 per individual. S.A. ¶ 2.5. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Ransomware Attack, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Out-of-Pocket Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. *Id.* ¶ 2.5.1. Settlement Class Members with valid, documented Extraordinary Out-of-Pocket Losses may also submit a claim for up to 10 hours of time spent remedying issues related to the Ransomware Attack at a rate of $30 per hour by providing an attestation and a brief description of: (1) the actions taken in response to the Ransomware Attack; and (2) the time associated with each action ("Attested Time"). *Id.* ¶ 2.5.4.

- **Residual Cash Payment.** In addition to, or in the alternative to making Claims for Ordinary Out-of-Pocket Losses and/or Claims for Extraordinary Out-of-Pocket Losses and Attested Time, Settlement Class Members may elect to receive a cash payment of up to $550 on a claims-made basis. *Id.* ¶ 2.7. The amount of the payment will be calculated by dividing the funds remaining in the Settlement Fund after payment of Claims for Ordinary Out-of-Pocket Losses, Claims for Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, notice and administration costs, and service award payments and attorneys' fees and expenses awarded by the Court, by the number of Residual Cash Payment claimants, and thus could be less than $550. *Id.* ¶ 2.7.

- **Credit Monitoring/Identity Theft Protection Services**. Settlement Class Members who submit a claim can elect to enroll in five years of identity theft protection and credit monitoring services under the settlement that will include the following features: (1) dark web scanning with user notification if potentially unauthorized use of a Settlement Class Member's personal information is detected; (2) identity theft insurance; (3) real-time credit monitoring with Equifax, Experian, and TransUnion; and (4) access to fraud resolution agents. *Id.* ¶ 2.8. These services will be made available to all Settlement Class Members who choose to enroll regardless of whether they submit a Claim for Ordinary Out-of-Pocket Losses, a Claim for Extraordinary Losses and Attested Time, and/or a Claim for a Residual Cash Payment under the settlement. *Id.*

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id*. ¶ 2.9.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses and Attested Time, the claimant must provide documentation supporting their claim (*id*. ¶¶ 2.4.2, 2.5.2).

If the aggregate amount of approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses and Attested Time exceeds the remaining amount of the Settlement Fund after payment for costs of Credit Monitoring Services and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses, approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.* ¶ 2.2.

Residual Cash Payments will be increased *pro rata* to a maximum of $550 or decreased *pro rata* to consume the remaining amount of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses. *Id.* ¶ 2.3.

3. **Proposed Injunctive Relief—Business Practice Commitments**

For a period of three (3) years following execution of the Settlement, OE commits to pay

for, implement and continue certain data-security enhancements and business practices. *Id.* ¶ 2.10.

### 4. Preliminary Approval, Notice, Objections and Exclusions, and Approved Claims

#### a. Preliminary Approval.

On June 18, 2024, Plaintiffs moved the Court to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 50). On June 20, 2024, the Court granted Plaintiffs' motion. (ECF No. 52).

#### b. Notice.

Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 63,004 unique Class Members, which had 62,939 actionable mailing addresses, via U.S. mail. *See* Shaffer Decl. ¶¶ 4-5. Notice was also provided via an internet website. *Id.* ¶ 8.

The Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against OE; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 50-1, PageID.346-58).

#### c. Objections and Exclusions.

The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on September 18, 2024, (ECF No. 52, PageID.444), and no exclusion requests and no objections have been received to date. Shaffer Decl. ¶¶ 14-15.

#### d. Approved Claims.

The claim deadline was October 18, 2024, and approximately 586 Online Claim Form submissions and 1,267 Paper Claim Form submissions have been received to date, for a total of 1,853 claims. *Id.* ¶¶ 12-13. If the Court (i) grants RP's request to award RP a $2,500.00 service award, $472,000.00 in reasonable attorneys' fees, and $28,000.00 in litigation expenses and (ii) approves approximately $100,000.00[4] for the costs of notice and administration, $900,000.00 of the $1,500,000.00 Settlement Fund will remain for payments to Class Members. Dividing this amount equally among the 1,853 claimants to date would result in a payment of **$485.69** to each claimant, an exceptional result in a data breach case. Ultimately, the amount of any cash payment will be calculated after payment of approved claims for credit monitoring ($46.00 per approved claimant for 5 years of 3-bureau credit monitoring).

As discussed in Plaintiff's Amended Motion for Service Award, Attorney's Fees, and Expenses (ECF No. 53), the "common fund" settlement obtained for RP and Settlement Class Members is an exemplary result for a data breach settlement. Below are example orders within the Seventh Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, none of which achieves the **$23.80** per Settlement Class Member achieved in this action:

- $14.64 per class member: *Linman v. Marten Transp., Ltd.*, No. 22-CV-204-JDP, 2024 WL 2974831 (W.D. Wis. June 13, 2024) (granting preliminary approval) ($520,000 fund for 35,511 individuals)

- $4.83 per class member: *Sheffler v. Activate Healthcare, LLC*, No. 1:23-CV-

---

[4] The Settlement Administrator has incurred $ 72,980.69 in costs of notice and administration through November 6, 2024, and estimates future costs of the completion of the administration, 20,277.00, making the estimated total cost to complete administration $93,257.69. Shaffer Decl. ¶ 16.

7

01206-SEB-TAB, 2024 WL 4008289 (S.D. Ind. Aug. 30, 2024) (granting preliminary approval) ($550,000 fund for 113,827 individuals)

- $1.57 per class member: *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *2 (E.D. Wis. Mar. 22, 2023) (granting final approval) ($3,750,000 fund for approximately 2.4 million individuals)

The result here far exceeds any of these comparators.

The still increasing claims rate of **2.94%** as of November 5, 2024 further confirms the quality of the result obtained for the class. "A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions." *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (noting the approximately 1% claims rate in *Fox v. Iowa Health Sys.*, No. 18-C-327, 2021 WL 826741, at *2 (W.D. Wis. March 4, 2021)). The claims rate here has already exceeded what has been deemed adequate in other data breach cases and is still rising.

### III. ARGUMENT

"A court may approve a settlement only after finding it 'fair, reasonable, and adequate' after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

8

    (iv) any agreement [made in connection with the settlement]; and

  (D) the proposal treats class members equitably relative to each other."

*In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (quoting Fed. R. Civ. P. 23(e)(2)). "In addition to the Rule 23(e)(2) considerations, the Seventh Circuit has identified the following general principles to guide a court's evaluation of a settlement: (1) the strength of the class's case, (2) the complexity and expense of further litigation, (3) the amount of opposition, (4) the reaction of class members to the settlement, (5) the opinion of competent counsel, and (6) the stage of the proceedings and the amount of discovery that was completed." *Id.* (citing *Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016)). "The Seventh Circuit has stressed that the first factor—the strength of the class's case—is the most important." *Id.* (citing *Martin*, 818 F.3d at 306).

**A. Rule 23(e)(2) considerations.**

  **i. Adequacy of representation.**

  RP's and class members' claims arise from the impact to their PII as a result of the Ransomware Attack. RP actively participated in the case by assisting with the initial and amended complaints and approving the Settlement. Maxey Decl. ¶ 22. The proposed service award does not misalign her interests with those of other class members. And proposed Class Counsel have capably litigated this action thus far, including through a motion to dismiss. These factors satisfy the adequacy requirement.[5]

  **ii. Arms-length negotiation.**

  The settlement is the result of arms-length negotiation after the Court ruled on a motion to

---

[5] *See Fox*, 2020 WL 5678704, at *2 (finding adequacy of representation met where "[t]he court sees no apparent conflicts between the named plaintiffs' interests and those of the rest of the class. Plaintiffs' counsel has capably litigated the case so far, surviving defendants' motion to dismiss, and nothing in the litigation up to this point calls counsel's capabilities into question.").

9

dismiss and after a mediation facilitated by Mr. Picker. *Id.* ¶ 16-17.

### iii. Adequacy of relief.

As data breach cases go, this case was stronger than average on the merits given the allegations that the Social Security numbers and driver's license numbers of RP and Class Members were stolen by an unauthorized actor and posted on the dark web. Compl. ¶¶ 1, 7-10; *see generally* Order (ECF No. 24). Commensurate with this, the "common fund" settlement obtained for RP and Settlement Class Members is an exemplary result for a data breach settlement, particularly a cyberattack case. Below are example orders within the Seventh Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, none of which achieves the **$23.72**[6] per Settlement Class Member obtained here:

- $14.64 per class member: *Linman v. Marten Transport, Ltd*, No. 4:22-CV-12086, 2024 WL 2974831, at *1-2 (W.D. Wis. June 13, 2024) (granting preliminary approval) ($520,000 fund for approximately 35,511 class members)

- $4.83 per class member: *Sheffler v. Activate Healthcare, LLC*, No. 1:23-CV-01206-SEB-TAB, 2024 WL 4008289 (S.D. Ind. Aug. 30, 2024) (granting preliminary approval) ($550,000 fund for 113,827 class members)

- $1.55 per class member: *In re Forefront Data Breach Litig.*, No. 1:21-cv-00887-LA, at ¶¶ 2, 10 (E.D. Wis. Oct. 3, 2022) (ECF No. 58) (granting preliminary approval) ($3,750,000 fund for approximately 2,413,552 class members)

Outside of the Seventh Circuit, recently approved data breach settlements of cases arising from cyberattacks have similarly resulted in a lower average dollar-per-person:

- $10.03 per class member: *In re CorrectCare Data Breach Litig.*, No. CV 5:22-319-DCR, 2024 WL 1403075 (E.D. Ky. Apr. 1, 2024) (denying preliminary approval motion without prejudice), *preliminary approval granted after further information submitted*, 2024 WL 1854711 (E.D. Ky. Apr. 29, 2024) ($6,490,000 fund for 646,701 class members).

- $7.25 per class member: *Holden v. Guardian Analytics, Inc.*, No. 2:23-CV-2115, 2024

---

[6] Plaintiffs' dark web expert located approximately 30,000 unique Social Security numbers on the dark web as a result of this Ransomware Attack, making the $23.72 per Settlement Class Member an even more impressive result.

WL 2845392 (D.N.J. June 5, 2024) (granting final approval) ($1,430,207.50 fund for approximately 197,270 class members)

- $6.18 per class member: *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022) (granting preliminary approval) ($4,300,000 fund for 694,679 class members)

- $1.33 per class member: *Barletti v. Connexin Software, Inc.*, 2024 WL 1096531 (E.D. Pa. Mar. 13, 2024) ($4,000,000 fund for approximately 3,000,000 class members)

### iv. Equitable treatment of class members relative to each other.

All Settlement Class members are treated equally under the Settlement as they all have the ability to make the same claims for reimbursement of out-of-pocket expenses and lost time and all approved claimants will receive a *pro rata* Residual Cash Payment from the remainder of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses. RP's proposed $2,500.00 service award does not diminish the equitable treatment of class members relative to each other.

### B. Seventh Circuit considerations.

#### i. The strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer.

As explained above in addressing the Rule 23(e)(2) factors, notwithstanding that this case was stronger than average on the merits, the **$23.72** per Settlement Class Member obtained here is an exemplary result for a data breach settlement.

#### ii. The complexity, length, and expense of further litigation.

RP faces significant risks and costs should she continue to litigate the case due to the potential expense and length of continued proceedings necessary to prosecute the litigation against

11

OE through motion practice, trial, and potential appeals.[7]

### iii. The amount of opposition to the settlement and reaction of class

The reaction of absent class members was the one factor the Court did not (and could not) address at preliminary approval. "The Court [should] consider objections from class members or other affected parties during the fairness hearing and before determining whether to grant final approval." *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) (Tharp, J.) (citation omitted). Here, no class members have excluded themselves from or objected to the proposed settlement, further supporting final approval.

### iv. The opinion of competent counsel.

Proposed Class Counsel have extensive experience in data breach and class action litigation. Maxey Decl. ¶¶ 3-13. Proposed Class Counsel further believe that accepting the negotiated terms of the settlement agreement is in the best interest of the class. *Id.* ¶ 27. The settlement is the result of arms-length negotiation reached after a mediation facilitated by Mr. Picker. *Id.* ¶ 16-17. These considerations support settlement approval. *See, e.g.*, *Lucas*, 2017 WL 6733688, at *12 (finding similar considerations supported settlement approval).

### v. The stage of the proceedings and the amount of discovery completed.

"The stage of the proceedings and the amount of discovery completed at the time of settlement is important because it 'indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.'" *Id.* (citation omitted). "The lack of discovery prior to

---

[7] *See Lucas*, 2017 WL 6733688, at *12 ("Here, the complexity, length, and expense of continued litigation is significant. As noted above, if the plaintiff's case … continues without settlement, the plaintiffs will be forced to litigate several complex issues—contested class certification, statute of limitations, joint employer liability, and damages calculations. The plaintiffs' damages calculations require expert analysis and opinion. Settlement, however, will eliminate the costs and risks of litigating these complex issues…. This factor weighs strongly in favor of approval of the settlement.").

12

settlement, however, does not prevent the Court from approving a settlement." *Id.* (citing *In re AT&T Mobility*, 270 F.R.D. at 350. "The 'pertinent inquiry' is what facts and information have been provided." *Id.* (quoting *In re AT&T Mobility Wireless*, 789 F. Supp. 2d at 967).

Here, prior to mediation, Plaintiffs served (i) interrogatories, requests for production, and requests for admission and (ii) information mediation-related information requests. Maxey Decl. ¶ 17. From OE's responses, proposed Class Counsel gained information about how OE acquired the information of RP and class members; why OE stored the information as it did; OE's communications with the threat actor; OE's efforts to mitigate the impact of the Ransomware Attack on RP and class members; the nature of the Ransomware Attack and the identity of the threat actor; OE's knowledge of how the Ransomware Attack was effected; and the number of class members with particular data elements impacted. *Id.* This information was more than sufficient to make an informed decision as to whether, and how, to settle the claims here.[8]

## IV. CONCLUSION

For the reasons set forth set forth above, final approval of the settlement and certification of the settlement class are warranted. Accordingly, RP requests the Court (i) enter the proposed orders granting this motion and Representative Plaintiff's Motion for Service Award, Litigation Costs, and Attorneys' Fees and (ii) enter a final judgment dismissing this case.

Date: November 11, 2024                                         Respectfully Submitted,

---

[8] *See Lucas*, 2017 WL 6733688, at *12 ("The plaintiffs acknowledge that the settlement occurred in the early stage of litigation with mostly informal discovery, but argue that this is a benefit to the class members in light of the financial and legal risks associated with formal discovery and motion practice. The Court finds that this factor does not weigh against the granting of preliminary approval of the Settlement Agreement.").

/s/ *Ryan D. Maxey*

Ryan D. Maxey
MAXEY LAW FIRM, P.A.
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com


Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Michael N. Hanna
N.D. IL Bar No. 85035 (FL)
Morgan & Morgan, P.A.
55 E Monroe St. Ste. 3800
Chicago, IL 60603
2000 Town Center, Suite 1900
Southfield, MI 4807
(313) 739-1950
mhanna@forthepeople.com


*Attorneys for Plaintiffs and the Proposed Class*

14

## **CERTIFICATE OF SERVICE**

    I hereby certify that on November 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

                                                     /s/ *Ryan D. Maxey*
                                                     Ryan D. Maxey